# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **Steven Chase**<br><br>and<br><br>**Shawn Penner**<br><br>On Behalf of Themselves and All Others Similarly Situated,<br>                          **Plaintiffs,**<br><br>   v.<br><br>**First Federal Bank of Kansas City,**<br>6900 N. Executive Dr.<br>Kansas City, MO 64120<br><br>**Richard T. Merker,**<br>10934 S. Cottage Lane<br>Olathe, KS 66061<br><br>**Helen Skradski,**<br>4025 N. 129th St.<br>Kansas City, KS 66109<br><br>**Benjamin J. Fries**<br>7674 Liv 245<br>Chillicothe, MO 64601<br><br>**William W. Hutton**<br>13939 Parallel Road<br>Basehor, KS 66007<br><br>**James R. Jarrett**<br>5718 Hauser Drive<br>Shawnee, KS 66216<br><br>                          **Defendants.** | Case No. _____<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Steven Chase and Shawn Penner ("Chase," "Penner," or "Plaintiffs"), through their attorneys, allege, upon personal knowledge as to their own acts and as to all other matters, upon information and belief based upon,

1

*inter alia,* the investigation made by and through their attorneys, and against Defendants First Federal Bank of Kansas City ("First Federal"), Richard T. Merker, Helen Skradski, Benjamin J. Fries, James R. Jarrett, and William W. Hutton (collectively referred to as the "Individual Defendants" or "the Board"), as follows:

## NATURE OF ACTION

1. Mutual banks are owned by their account holders—often called members, depositors, or member depositors. Plaintiffs and the Class were members of Inter-State Federal Savings and Loan Association of Kansas City ("Inter-State"). As members of Inter-State, Plaintiffs and the Class owned the bank, including its capital.

2. Inter-State operated under a Charter ("the Charter"). The Charter governed Inter-State's operations, defined the bank's relationship with its members, and bound the bank's Board of Directors. Most notably, the Charter required Inter-State's Board of Directors to make distributions of the bank's excess earnings to the members.

3. Over time, Inter-State accumulated tens of millions of dollars in excess earnings and capital. Plaintiffs and the Class, however, never received the mandatory capital distributions. Inter-State's Board of Directors violated the Charter and breached their fiduciary duties by failing to make the mandatory distributions. Because the distributions to members were never made, the bank's capital reserves grew steadily.

4. In 2015, Inter-State's Board of Directors approved a merger with First Federal Bank of Kansas City ("First Federal"), another local mutual bank. The Board of Directors rubber stamped the merger and, in doing so, disregarded their fiduciary duties to the bank's members.

5. Although the Charter required a member vote on the merger, the Board did not allow the members to vote. The Board also failed to advise Inter-State's members of the vast

2

capital disparity between the two banks. Inter-State had $25 million more than First Federal in excess capital, as explained in greater detail below. When the banks combined, each bank and its members gained an ownership interest in the other bank's capital. This worked well for First Federal and its members. They were unjustly enriched and received a windfall—ownership in the additional $25 million in capital that Inter-State and its members brought to the table. Plaintiffs and the Class, on the other hand, received no benefit. Instead, their ownership interest was significantly diluted. They did not receive compensation or any corresponding benefit for this dilution.

6. Moreover, upon information and belief, the Board failed to hire an experienced independent banking consultant to conduct a neutral evaluation of the merger, the bank's alternative options, and the effect the merger would have on Inter-State's members.

7. Plaintiffs and the Class suffered damages as a direct and proximate result of the Defendants' conduct. These losses include unpaid capital distributions and dilution of the members' ownership interest in more than $25 million. Plaintiffs bring this class action on behalf of themselves and all others similarly situated, seeking damages from the Defendants for their wrongful conduct and involvement in the inequitable merger.

## PARTIES

8. Plaintiff Steven Chase is a Shawnee, Kansas, resident with more than 30 years of experience in banking and financial services. Chase was a member of Inter-State when it merged with First Federal, and was damaged by Defendants' actions.

9. Plaintiff Shawn Penner is a resident of Wichita, Kansas. Penner was a member of Inter-State when it merged with First Federal, and was damaged by Defendants' actions.

3

10. Defendant First Federal is the successor entity resulting from the merger of Inter-State and First Federal Bank of Kansas City. First Federal's principal place of business is located at 6900 North Executive Drive, Kansas City, Missouri 64120. First Federal services the Kansas City metro area and has numerous locations in Kansas and Missouri.

11. Defendant Richard Merker is a resident of Olathe, Kansas. Merker is a director of First Federal bank and a former director of Inter-State bank. Merker was a director of Inter-State at the time the Board of Directors approved Inter-State's merger with First Federal.

12. Defendant Helen Skradski is a resident of Kansas City, Kansas. Skradski is a director of First Federal bank and a former director of Inter-State bank. Skradski was a director of Inter-State at the time the Board of Directors approved Inter-State's merger with First Federal.

13. Defendant James Jarrett is a resident of Johnson County, Kansas. Jarrett is a former director of Inter-State bank. Jarrett was a director of Inter-State at the time the Board of Directors approved Inter-State's merger with First Federal.

14. Defendant Benjamin Fries is a resident of Chillicothe, Missouri. Fries is a director of First Federal bank and a former director of Inter-State bank. Fries was a director of Inter-State at the time the Board of Directors approved Inter-State's merger with First Federal.

15. Defendant William Hutton is a resident of Basehor, Kansas. Hutton is a director of First Federal bank and a former director of Inter-State bank. Hutton was a director of Inter-State at the time the Board of Directors approved Inter-State's merger with First Federal.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds

$5,000,000, exclusive of interest and costs, and this matter is a class action in which certain Class members are citizens of a different state than certain Defendants.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendants Fries and First Federal are residents of this Judicial District, First Federal does business throughout this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims—including the inequitable and wrongful transfer of Inter-State's excess capital to First Federal—took place within this District.

## FACTS COMMON TO ALL COUNTS

### *Inter-State's Status as a Mutual Bank*

18. Historically, mutual banks have provided communities with a stable place to obtain loans and invest savings. In turn, the mutual banks invest the members' funds to sustain growth and build reasonable capital reserves.

19. Unlike private or commercial banks, which issue stock and answer to shareholders, mutual banks are owned by their account holders—typically referred to as members, depositors, or member depositors. The members own the bank and its assets, including its excess capital.

20. Inter-State was founded as a mutual savings and loan institution in 1889 and originally operated under the name Inter-State Federal Savings and Loan Association.

21. At all times relevant to this action, Inter-State was regulated by the Office of the Comptroller of the Currency ("OCC").

22. To ensure banks' stability and protect account holders, the OCC and other government agencies require federally-chartered mutual banks to maintain minimum amounts of capital. For example, regulators might require banks to maintain an 8% capital-to-asset ratio to be considered adequately capitalized. Under this example, if a bank had $100 million in assets, it

5

would need $8 million in capital to meet the capital threshold.

23. Over time, successful mutual banks accumulate excess capital—capital beyond the mandatory capital minimums. In the above example, anything beyond $8 million would be considered excess capital. So, if the bank had $15 million in capital, it would have $7 million in excess capital. Required minimum capital levels for mutual banks are consistent, but excess capital levels can vary greatly from one bank to another.

### *Inter-State's Charter*

24. Bank charters have the force and effect of contracts. Inter-State's Charter governed its relationship with depositors/members.

25. Plaintiffs and the Class received share interests in Inter-State in exchange for their membership. The Charter states that "[a]ll holders of the association's savings accounts and all borrowers therefrom are members," and permits the association to raise capital "by accepting payments on savings accounts representing share interests in the association."

26. The Charter's language reflects the valid and legally recognizable property interest that Plaintiffs and the Class held in Inter-State and its assets. The Charter's "winding up" provision, for example, states that "[a]ll holders of savings accounts of the association **shall be entitled to equal distribution of assets, pro rata** to the value of their savings accounts, in the event of voluntary or involuntary liquidation, dissolution, or winding up of the association." (Emphasis added.)

27. The members were entitled to more than funds upon dissolution or winding up, however. Section 10 of the Charter addresses "[r]eserves, surplus, and distribution of earnings." It required the Board of Directors to distribute excess earnings to the members. Specifically, the section states that, "after payment or provision for payment of all expenses, credits to general

reserves and such credits to surplus as the board of directors may determine, and provision for bonus on savings accounts as authorized by regulations made by the Federal Home Loan Bank Board, the board of directors of the association ***shall cause the remainder of the net earnings*** of the association for the 6 months' period ***to be distributed promptly on its savings accounts, ratably***, as declared by the board of directors, to the withdrawal value thereof; in lieu of or in addition to such net earnings, any of the association's surplus funds may be likewise distributed. Such net earnings shall be credited to savings accounts or paid, as directed by the owner." (Emphasis added.)

28. Under the Charter, the distribution of excess earnings was mandatory. Despite this clear directive, the Board of Directors breached their obligation and failed to distribute *any* excess earnings to the members.

29. By failing to abide by the terms of the Charter and make capital distributions, the Board breached their fiduciary duties. Because the Board did not distribute excess earnings as required by the Charter, Inter-State continued to accumulate significant excess capital.

### *The Inequitable Merger with First Federal*

30. First Federal is a mutual bank that has serviced the Kansas City area since 1939.

31. Upon information and belief, First Federal and Inter-State began discussing a merger sometime in 2014.

32. The merger with First Federal was ill-conceived from its inception because better options were available. These options ranged from simply appointing new bank leadership to merging with or acquiring other institutions. The Board rejected these options and/or failed to give them due consideration.

33. The most glaring flaw in the proposed merger with First Federal was the capital

disparity between the two banks. In late 2014, Inter-State had a capital-to-asset ratio of 23.63%; First Federal had a ratio of 12.41%. When set to an equalized ratio of 12.41%, Inter-State had over $25 million more than First Federal in excess capital.

34. Put simply, Inter-State had accumulated a war chest of $25 million in excess capital by not distributing excess funds to members, as required by the Charter. Under the proposed merger, Inter-State's members would not receive distributions on the $25 million they owned. Inter-State's Board of Directors would simply hand the $25 million over to First Federal and its members.

35. Inter-State and its Board of Directors were aware of the capital disparity. Plaintiff Chase wrote to Inter-State and the Board to notify them of the capital disparity and the harm that would flow to Inter-State's members if the merger were to proceed. Inter-State responded through its counsel and claimed that it had considered the "capital differential." Nonetheless, Inter-State's counsel informed Chase that the bank intended to proceed with the merger.

36. Under the proposed merger, Inter-State and First Federal were to operate under First Federal's name and charter. First Federal's charter is different in form and substance from Inter-State's charter. It does not have the same language on capital distributions, and provides members with a lesser interest in the bank's excess earnings and capital.

37. Inter-State's Charter prohibits the Board of Directors from amending, adding, altering, changing, or repealing the Charter without holding a meeting for the members and obtaining member approval. Yet again, the Individual Defendants violated the Charter and breached their fiduciary duties, this time by failing to provide the members with an opportunity to vote on the merger and the change in charter.

38. Inter-State and the Individual Defendants also failed to properly notify the bank's

members regarding the terms of the merger and its consequences. This includes failing to notify the members that the merger would significantly dilute their interest in more than $25 million and affect their right to capital distributions.

39. Additionally, upon information and belief, the Individual Defendants failed to retain an experienced, independent banking advisor to evaluate the merger, its impact on the bank's members, and whether better alternatives existed.

40. Despite the huge capital disparity between the two banks, the damage Inter-State's depositors/members would suffer from the merger, and the Board's obligations under the Charter, on or about April 15, 2015, the Individual Defendants approved Inter-State's merger with First Federal. Inter-State and First Federal submitted their application for merger to the OCC on or about April 29, 2015.

41. For a merger of mutual banks to receive government approval, merger applicants must demonstrate to the OCC that the terms of the merger are equitable to the banks' members. Inter-State and First Federal made the following cursory and untrue statement in their application to the OCC: "The terms of the Merger are equitable to the savings account holders, borrowers, and creditors of each party in that their rights and interests will not be affected…" In truth, though, the merger was far from equitable for Inter-State's members: their interest in $25 million would be significantly diluted and they would be subject to the terms of a new and less favorable charter.

42. Inter-State and First Federal completed the merger in or around March 2016. The banks now operate under First Federal's name and charter.

43. By approving, permitting, and participating in the merger, the Individual Defendants breached their fiduciary duties in the myriad ways described above, including the

9

inequitable dilution of Plaintiffs and the Class's ownership interest in the bank and its assets.

44. First Federal was unjustly enriched by accepting and retaining Inter-State's excess capital without providing capital distributions or any corresponding benefit to Inter-State's members.

**CLASS ALLEGATIONS**

45. Plaintiffs bring this class action on behalf of themselves and all other similarly situated members of the following class:

> All members of Inter-State Federal Savings and Loan Association as of March 23, 2016.

Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and any of Defendants' subsidiaries, affiliates, officers, directors, employees, authorized dealers, legal representatives, heirs, successors, or assignees. Plaintiffs reserve the right to amend the definition of the Class if discovery and/or further investigation reveals that the Class should be expanded or otherwise modified.

46. This action has been brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), and 23(b)(3).

47. **Numerosity/Impracticability of Joinder**: The members of the Class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably estimate that there are hundreds or thousands of class members. The precise number of Class members can be readily ascertained and identifying information for Class members is, upon information and belief, within Defendants' possession or control.

48. **Commonality and Predominance**: There is a well-defined community of interest and common questions of law and fact, which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary

from one Class member to another, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

    a.    Whether the Individual Defendants breached their fiduciary duties to Plaintiffs and the Class by approving Inter-State's merger with First Federal;

    b.    Whether the Individual Defendants breached their fiduciary duties to Plaintiffs and the Class by failing to make capital distributions, as required by the Charter, prior to the merger;

    c.    Whether the Individual Defendants acted inconsistent with and/or in violation of Inter-State's Charter;

    d.    Whether the Individual Defendants breached their fiduciary duties by failing to call a member vote on Inter-State's proposed merger with First Federal;

    e.    Whether the Individual Defendants breached their fiduciary duties by failing to notify the Class of the merger's details and its consequences;

    f.    Whether the Individual Defendants breached their fiduciary duties by failing to retain an experienced and independent banking consultant to analyze the proposed merger and its effect on the bank's members;

    g.    Whether Plaintiffs and the Class's ownership interest in Inter-State's capital was wrongfully and inequitably diluted as a result of Inter-State's merger with First Federal;

    h.    Whether the Individual Defendants breached their fiduciary duties by failing to approve a capital distribution to Plaintiffs and the Class to address the capital disparity between the banks;

    i.    Whether First Federal was unjustly enriched by the merger with Inter-State at the expense of Plaintiffs and the class;

j.	Whether First Federal's retention of Inter-State and Inter-State's depositors/members' excess capital is inequitable under the circumstances;

k.	Whether Plaintiffs and the Class are entitled to damages.

49.	**Typicality**: The representative Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and Class members have suffered the same injuries as a result of Defendants' wrongful conduct. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

50.	**Adequacy**: Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

51.	**Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. Furthermore, as the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation presents the potential for inconsistent or contradictory judgments. There will be no difficulty in the management of this class action. A class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

Notice of this action can readily be provided to Class members.

# COUNT I
## BREACH OF FIDUCIARY DUTY
### (Defendants Merker, Skradski, Jarrett, Fries, and Hutton)

52. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

53. As directors of Inter-State, Defendants owed fiduciary duties to the bank's depositors/members. Defendants' fiduciary duties included a duty of care and a duty to act in the best interests of Plaintiffs and the Class.

54. Defendants failed to use reasonable care and breached their fiduciary duties to Plaintiffs in numerous ways, including:

   (a) failing to ratably distribute excess capital and earnings, as required by the Charter;

   (b) failing to call for a member vote on the Inter-State-First Federal merger;

   (c) failing to properly notify Plaintiffs and the Class of the merger's terms and consequences;

   (d) failing to make capital distributions in advance of the merger and the dilution members would suffer because of the known capital disparity between the two banks;

   (e) failing to retain an experienced, independent third-party evaluator to analyze the merger and its consequences;

   (f) acting inconsistent with and in violation of the Charter's terms; and

   (g) by approving, permitting, and participating in the merger at Plaintiffs and the Class's expense.

55. As a direct and proximate result of Defendants' breaches, Plaintiffs and the Class

have suffered damages in an amount to be determined at trial.

## COUNT II
## UNJUST ENRICHMENT
**(First Federal Bank of Kansas City)**

56. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

57. A benefit was conferred upon First Federal in the form of Inter-State's assets, including its excess capital, to which Inter-State's depositors/members had an ownership interest.

58. First Federal appreciated or had knowledge of the benefit.

59. First Federal accepted and has retained the benefit under circumstances as to make it inequitable for First Federal to retain the benefit without payment of its value to Plaintiffs and the class.

## COUNT III
## CONVERSION
**(First Federal Bank of Kansas City)**

60. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

61. Plaintiffs and the Class owned Inter-State's excess capital, including ownership in, and a right to possession of, unpaid distributions on excess earnings.

62. First Federal took control of Inter-State's excess capital with the intent to exercise control over it.

63. First Federal thereby deprived Plaintiffs and the Class of their ownership rights in the capital and their right to possession of unpaid distributions on excess earnings, causing Plaintiffs and the Class to suffer damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that as to each of the above Counts, the Court enter an Order granting the following relief:

a. An order certifying this case as a class action, as defined above, and appointing the undersigned counsel as Class Counsel;

b. Damages in excess of $5 million and in amount to be determined at trial;

c. Plaintiffs' costs, reasonable attorneys' fees, prejudgment interest, and disbursements in this action;

d. All other relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs respectfully request a trial by jury on all issues so triable.


Dated: February 8, 2017                     Respectfully Submitted,

                                                                **EDGAR LAW FIRM LLC**

                                                                */s/ John F. Edgar*
                                                                John F. Edgar       # 47128
                                                                Matthew T. Swift   # 63601
                                                                1032 Pennsylvania Ave.
                                                                Kansas City, MO 64105
                                                                Telephone: (816) 531-0033
                                                                Facsimile: (816) 531-3322
                                                                Email: jfe@edgarlawfirm.com
                                                                Email: mts@edgarlawfirm.com