# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| STEVEN CHASE and SHAWN PENNER, individually and on behalf of others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 4:17-CV-0094-DGK |
| v. | ) |
| FIRST FEDERAL BANK OF KANSAS CITY, et al., | )<br>)<br>) |
| Defendants. | ) |

## ORDER GRANTING MOTION TO DISMISS

Plaintiffs Steven Chase and Shawn Penner were two member-depositors of Inter-State Federal Savings & Loan Association of Kansas City ("Inter-State"), a mutual savings association chartered under federal law. In 2015, Inter-State's Board of Directors approved a merger with another federal mutual savings association, First Federal Bank of Kansas City ("First Federal"). Plaintiffs have brought a putative class action suit against First Federal and five of Inter-State's former directors. The First Amended Complaint ("the Complaint") (Doc. 6) alleges the directors breached their fiduciary duties to Inter-State's member-depositors by not distributing Inter-State's accumulated capital and earnings, and by approving the merger. It also claims First Federal unjustly enriched itself in the merger.

Now before the Court is Defendants' Motion to Dismiss First Amended Class Action Complaint (Doc. 21). Holding that the Complaint rests on a faulty legal premise, namely, that the member-depositors had fiduciary rights in Inter-State comparable to those of shareholders in a stock bank, Defendants' motion is GRANTED.

## Standard of Review

A complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in the Plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). The court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

## Background

Inter-State is a federal mutual savings association which has served the Kansas City, Missouri, market since 1939. Plaintiffs Steven Chase and Shawn Penner were member-depositors of Inter-State at the time it merged with First Federal. Defendants are First Federal and five former directors of Inter-State: Richard T. Merker, Helen Skradski, Benjamin J. Fries, William W. Hutton, and James R. Jarrett. With the exception of Mr. Jarrett, all of the former directors named as defendants are now directors of First Federal.

In April 2015, Inter-State's board approved the merger into First Federal. Mr. Chase objected to the merger and expressed his concerns to Inter-State's board in May 2015. He argued the merger was inequitable because of an alleged $25 million "capital disparity" between

the two institutions. He believed Inter-State was overcapitalized by $25 million, and he sought a distribution of that "excess capital" to Inter-State's then-current depositors. Inter-State's board considered Mr. Chase's position and rejected it.

After receiving merger approval from the primary regulator of both institutions, the Office of the Comptroller of the Currency ("OCC"), Inter-State and First Federal completed their merger in March of 2016.

**Inter-State's Charter**

Section 10 of Inter-State's charter ("the Charter") speaks to two types of potential distributions to members: (1) periodic "net earnings" and (2) "surplus funds." In relevant part, Section 10 of the Charter (titled "Reserves, surplus, and distribution of earnings"), states:

> As of June 30 and December 31 of each year, after payment or provision for payment of all expenses, credits to general reserves *and such credits to surplus as the board of directors may determine*, and provision for bonus on savings accounts as authorized by regulations made by the Federal Home Loan Bank Board, the board of directors of the association shall cause the remainder of the *net earnings* of the association for the 6 months' period to be distributed promptly on its savings accounts, ratably, as declared by the board of directors, to the withdrawal value thereof; in lieu of or in addition to such *net earnings*, any of the association's *surplus funds may be likewise distributed*. . . . Notwithstanding any other provision of its charter, the association *may distribute net earnings* on its savings accounts on such other basis and in accordance with such other terms and conditions as may from time to time be authorized by regulations made by the Federal Home Loan Bank Board. All holders of savings accounts of the association shall be entitled to equal distribution of assets, pro rata to the value of their savings accounts, in the event of voluntary or involuntary liquidation, dissolution, or winding up of the association.

3

Doc. 22-2 at 3-4 (emphasis added).[1]

Section 11 states: "No amendment, addition, alteration, change, or repeal of this charter shall be made" unless made by the board and approved by the Federal Home Loan Bank Board and the members. *Id.* at 4.

The Complaint asserts three claims. Count I alleges the former directors breached their fiduciary duties to the members in numerous ways, including by:

    (a) failing to ratably distribute excess capital and earnings, as required by the Charter;

    (b) failing to call for a member vote on the Inter-State-First Federal merger;

    (c) failing to properly notify Plaintiffs and the Class of the merger's terms and consequences;

    (d) failing to make capital distributions in advance of the merger and the dilution members would suffer because of the known capital disparity between the two banks;

    (e) failing to retain an experienced, independent third-party evaluator to analyze the merger and its consequences;

    (f) acting inconsistent with and in violation of the Charter's terms; and

    (g) by approving, permitting, and participating in the merger at Plaintiffs and the Class's expense.

Am. Compl. ¶ 54. Counts II and III are brought against First Federal, alleging unjust enrichment and conversion respectively arising from First Federal's acquisition of Inter-State's "excess capital" through the merger. Plaintiffs contend that as a result of Defendants' conduct, they have

---

[1] In its amicus brief, the OCC observes—and Plaintiffs do not contest—that this provision is standard in the "Charter K (Revised))" for federal mutual savings associations. The OCC also notes that while the standard charter has changed over time, this provision, Section 10, was contained in Charter K, Charter K (Revised), and Charter N, and a similar provision was contained in Charter E.

suffered the loss of: (1) unpaid capital distributions, and (2) dilution of their ownership interest in approximately $25 million in Inter-States "excess capital." *Id.* ¶ 7.

## Discussion

I. **Kansas law governs this dispute.**

The parties agree that Kansas law governs this dispute,[2] and the Court concurs. A federal court exercising its diversity jurisdiction applies the choice of law rules of the state where it sits. *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). This Court sits in Missouri, and Missouri follows the "'most significant relationship' test from the Restatement (Second) of Conflict of Laws § 145 for resolving choice-of-law questions in tort actions." *Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 668 F.3d 991, 996 (8th Cir. 2012). Section 145 states:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to that occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>    (a) the place where the injury occurred,
>    (b) the place where the conduct causing the injury occurred,
>    (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>    (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement § 145. Applying these factors to the present case, the alleged injury occurred in either Kansas or Missouri (or both), but the place where the conduct causing this injury occurred appears to be Kansas. Further, both Plaintiffs and most of the Defendants reside in Kansas;

---

[2] Although neither party performs a choice-of-law analysis, both cite Kansas substantive law.

5

Inter-State appears to have been based in Kansas; and the parties relationship appears to be centered in Kansas. Consequently, Kansas law should govern this dispute.

## II. The Complaint fails to plead a claim for breach of fiduciary duty.

Under Kansas law, "the essential elements of a breach of fiduciary duty claim are duty, breach, causation, and damages." *Osage Capital, LLC v. Bentley Invs. of Nevada III, LLC*, 319 P.3d 595 (table), 2014 WL 902189, at *7 (Kan. Ct. App. 2014). Defendants contend the Complaint fails to state a claim for breach of fiduciary duty because Inter-State's directors did not owe Plaintiffs and the other member-depositors a duty to distribute accumulated capital and retained earnings, or to allow them to vote on the merger. Additionally, because Plaintiffs and the other member-depositors lacked an enforceable ownership interest in the savings association, they were not damaged in any way because they lost nothing of value in the merger.

### A. The member-depositors "ownership" of Inter-State did not give them rights comparable to those of stockholders in a bank, thus the directors did not owe them a fiduciary duty to distribute accumulated capital or retained earnings.[3]

A federal mutual savings association differs most prominently from a federal stock savings association in that an individual has no specific individual equity interest in the association. Dwight C. Smith & James H. Underwood, *"Mutual Savings Associations and Conversions to Stock Form"* (May 1997) at 4. The net worth of the mutual savings association belongs to the members as a whole; individual members are unable to exercise the rights of equity holders. *Id.* at 10. Another fundamental difference is that whereas stock associations can raise capital by issuing stock, mutual savings associations are limited in their ability to raise capital. Mutual savings associations issue no capital stock and therefore have no stockholders;

---

[3] This portion of the Court's Order draws heavily from the Office of the Comptroller of the Currency's *amicus curiae* brief (Doc. 28). The Court quotes and paraphrases it without further attribution.

they build capital almost exclusively through retained earnings. OTS Examination Handbook 110.1 (December 2003). A mutual savings institution's

> ability to raise capital is restricted to retained earnings. These are the earnings that stay with the bank after expenses, salaries, taxes and interest [are] paid on accounts. It can take a long time to grow retained earnings. Because retained earnings grow slowly, many mutuals are conservative in their capital deployment and maintain healthy capital levels to weather economic storms.

*Mutual Savings Banks—A Primer,* American Bankers Association (2009) at 2.

The member-depositors of a mutual savings association own the mutual in an almost nominal sense. They have no right to capital distributions generally, or any ability to compel a distribution outside of a dissolution. Although member-depositors have a right to receive a pro rata distribution of capital in a solvent mutual savings association if it voluntarily dissolves, this is an extremely unlikely event. Regulators of federal mutual savings associations have not allowed a mutual to voluntary dissolve unless they had significant concerns about the entity's financial health and an alternative—such as conversion to a stock form of a bank—was not feasible. *See York v. Federal Home Loan Bank Board*, 624 F.2d 495, 500 (4th Cir. 1980) (noting that as of that time, "no solvent association has ever secured approval for dissolution.").

The Supreme Court has drawn a bright line between stockholders' interests in stock banks and member-depositors' interests in mutual savings associations:

> The asserted interest of the depositors is in the surplus of the bank, which is primarily a reserve against losses and secondarily a repository of undivided earnings. So long as the bank remains solvent, depositors receive a return on this fund only as an element of the interest paid on their deposits. To maintain their intangible ownership interest, they must maintain their deposits. If a depositor withdraws from the bank, he receives only his deposits

7

> and interest. If he continues, his only chance of getting anything more would be in the unlikely event of a solvent liquidation, a possibility that hardly rises to the level of an expectancy. It stretches the imagination very far to attribute any real value to such a remote contingency, and when coupled with the fact that it represents nothing which the depositor can readily transfer, any theoretical value reduces almost to the vanishing point.

*Society for Savings v. Bowers*, 349 U.S. 142, 150 (1955) (discussing the taxation of ownership interests in mutual savings institutions versus shareholders' interests in stock banks). In a later case, the Supreme Court reiterated that "[t]he right to participate in the net proceeds of a solvent liquidation is also not a significant part of the value of the shares." *Paulsen v. C.I.R.*, 469 U.S. 131, 139 (1985).[4] As Judge Easterbrook observed,

> Nominally the customers own the mutual, but it is ownership in name only. They cannot sell what they "own," and if they withdraw savings they receive only the nominal value of the account rather than a portion of the mutual's net worth, which is valuable to them only to the extent it permits the bank to pay higher interest.

*Ordower v. Office of Thrift Supervision*, 999 F.2d 1183, 1185 (7th Cir. 1993). In short, "[a] depositor's interest in a mutual S&L is a liquidation preference, not a transferable property right." *Id.* at 1187. *See also York v. Federal Home Loan Bank Board*, 624 F.2d 495, 499-500 (4th Cir. 1980) (holding that member-depositors interest in such an association is "essentially that of creditors," because "their only opportunity to realize a gain of any kind would be in the event" the association "dissolved or liquidated"); *Reschini v. First Federal Sav. And Loan Ass'n of Indiana*, 46 F.3d 246, 248 (3d Cir. 1995) (citing *Ordower* and holding the "proprietary interest of a depositor-member in a mutual savings association is a chimera").

---

[4] Additionally, as discussed at length in the OCC's brief, both *Bowers* and *Paulsen* were decided when all federal mutual savings association charters contained a similar version of section 10 of Inter-State's charter that is quoted at length in the Background section of this order. In fact, Inter-State's charter is the same standard form charter, "Charter K (Revised)," that was at issue in *Paulsen*.

8

The cases Plaintiffs rely on for their claim that the directors owed them a fiduciary duty under the circumstances of this particular case, *Appeal of Corporators of Portsmouth Sav. Bank*, 525 A.2d 671 (N.H. 1987) and *In re Springfield Savings Society*, 231 N.E. 314 (Oh. Ct. App. 1966), are distinguishable. Both cases concern state-chartered institutions, and no federal court has followed either case for the propositions cited by Plaintiffs.

Hence, the Court concludes that Plaintiffs and the putative class members do not have an ownership right in the association's accumulated capital or retained earnings that can possibly give rise to a claim for breach of fiduciary duty for failure to distribute the accumulated capital or retained earnings.[5]

### B. Inter-State's charter did not give Plaintiffs a right to vote on the merger.

The Court also holds that Plaintiffs' claim that the directors breached their fiduciary duties by failing to call for a member vote on the merger fails as a matter of law because Plaintiffs had no right to vote on the merger. The Complaint does not cite any charter provision supporting such an assertion, nor can the Court find any. While the plain text of the charter requires a member vote for any "amendment, addition, alteration, change or repeal" of the charter, it does not require a vote for a merger. A merger is sufficiently different from an amendment or repeal that if the authors of the charter had meant to require a member vote for such an event, they would have included the word "merger" in the charter.

The Court also notes that a ruling that a member vote was required would be inconsistent with long-standing regulatory guidance given to mutual savings associations. *See* 12 C.F.R. § 5.33(o)(4) (stating the OCC may require a vote of the members in order for a merger to be effective); *OTS Business Transactions Division Memorandum: Mutual Savings Associations and*

---

[5] The Court does not address the question of when directors of mutual savings associations might owe a fiduciary duty to their member-depositors.

9

*Conversion to Stock Form* (May 1997) at 13 ("In the case of a merger with another savings institution . . . approval of a mutual institution's members is not required unless the OTC specifically requires a vote in connection with its review of the merger transaction."). Thus no member vote was required.

### C. Plaintiffs did not suffer any damages.

The Complaint alleges Plaintiffs suffered damages in the form of unpaid capital distributions and dilution of their ownership interest in the accumulated excess capital. As discussed above, Plaintiffs never had an enforceable right to any capital distributions or to Inter-State's accumulated excess capital, and so they did not suffer any damages. And without damages, they do not have a viable claim for breach of fiduciary duty.

## III. The Complaint fails to plead a claim for unjust enrichment or conversion.

Finally, the Complaint asserts claims against First Federal for unjust enrichment (Count II) and conversion (Count III). To prevail on a claim of unjust enrichment, a plaintiff must show (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the defendant's acceptance or retention of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment. *Jones v. Culver*, 329 P.3d 511, 514 (Kan. Ct. App. 2014). Similarly, "[c]onversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." *Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241, 1246 (Kan. 2005). To succeed on a claim for conversion, a plaintiff must show a cognizable ownership interest that was converted. *See Carmichael v. Halstead Nursing Ctr., Ltd.*, 701 P.2d 934, 938 (Kan. 1985).

Both of these claims are premised on Plaintiffs owning Inter-State's accumulated surplus, and both fail because Plaintiffs lacked enforceable rights in this surplus. Plaintiffs cannot show the first element of an unjust enrichment claim, that they conferred a benefit upon First Federal in the form of the Inter-State's accumulated surplus, because they did not have any right to the surplus. Likewise, Plaintiffs' conversion claim fails because they lacked an ownership interest in Inter-State's accumulated surplus that was transferred to First Federal.

Consequently, Counts II and III fail as a matter of law.

## Conclusion

For the reasons discussed above, Defendants' motion is GRANTED. Plaintiffs' First Amended Complaint is DISMISSED.

**IT IS SO ORDERED.**

Date: March 12, 2018            /s/ Greg Kays
                                GREG KAYS, CHIEF JUDGE
                                UNITED STATES DISTRICT COURT